UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESSEX INSURANCE COMPANY,

    Plaintiff,

v.

CASE NO.:

TINA MARIE ENTERTAINMENT, LLC d/b/a SCENE
PREMIUM NIGHT CLUB, CHASMA S. LAGRANT,
SATIS J. BAILEY, DEONTE ARCHER and
KENDRIC STEPHENS,

    Defendants.
_____/

## COMPLAINT FOR REFORMATION

Plaintiff, Essex Insurance Company ("Essex"), by and through its undersigned attorneys, files this Complaint for Reformation and states:

### FACTS REGARDING JURISDICTION AND VENUE

1. At all material times, Essex is and was a Delaware corporation with its principal place of business in Virginia.

2. At all material times, Essex is and was a surplus lines insurer which has been made eligible by the Department of Financial Services to issue insurance coverage under Florida's Surplus Lines Law. See Fl. Stat. § 626.913 *et seq.*

3. Upon information and belief, at all material times, Tina Marie Entertainment, LLC d/b/a Scene Premium Night Club ("TME") is and was a Florida limited liability company located in St. Petersburg, Florida, whose sole member is a resident of St. Petersburg, Florida.

4. Upon information and belief, at all materials times, Chasma S. Lagrant is and was a resident of Pinellas County, Florida.

5. Upon information and belief, at all materials times, Satis J. Bailey is and was a resident of Pinellas County, Florida.

6. Upon information and belief, at all materials times, Deonte Archer is and was a resident of Pinellas County, Florida.

7. Upon information and belief, at all materials times, Kendric Stephens is and was a resident of Pinellas County, Florida.

8. The amount in controversy exceeds the sum of $75,000 exclusive of interest, attorneys fees and costs. This Court has diversity jurisdiction by virtue of 28 U.S.C. § 1332.

9. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(a) because the Defendants reside within the district, and because a substantial part of the events giving rise to the claim occurred in the district.

## GENERAL ALLEGATIONS

### Procurement and Issuance of the Essex Policy

10. On or about July 27, 2011, TME completed an application for liability insurance and submitted the application to Essex for a quote. *See* Application, attached hereto as Exhibit A.

11. On August 8, 2011, Essex offered a quote to TME. *See* Quote, attached hereto as Exhibit B.

12. Pursuant to the Quote, the policy offered through Essex would contain several endorsements, including "**ME-189(01-09) RESTAURANT AND BARS**" (the "Restaurant and Bars Endorsement") and "**MEGL 1279 06 10 LIMITED ASSAULT AND**

**OR BATTERY: complete with sublimit of 100,000/200,000**" (the "Assault and Battery Sublimit Endorsement"). *See* Ex. B.

13. TME accepted the Quote and a Binder was issued on August 23, 2011. *See* Binder, attached hereto as Exhibit C.

14 Pursuant to the Binder, the coverage being offered included the 100,000/200,000 sublimit for assault and battery claims. *See id.*

15. The Binder also indicated that it was subject to the terms and conditions of the Quote. *See id.*

16. Essex thereafter issued a commercial general liability policy to TME, Policy No. 3DG7517, effective from August 17, 2011 to August 17, 2012 (the "Policy"). A copy of the Policy is attached hereto as Exhibit D.

17. The Supplemental Declarations page of the Policy as issued indicates "100,000/200,000 Assault and Battery." *See id.* at p. 5. However, the Policy as issued did not include the Restaurant and Bars Endorsement or the Assault and Battery Sublimit Endorsement. *See id.*

18. On or about February 13, 2012, Essex issued a General Change Endorsement, which added the Restaurant and Bars Endorsement and the Assault and Battery Sublimit Endorsement to the Policy, effective from 08/17/11. *See* General Change Endorsement, attached hereto as Exhibit E.

19. The Restaurant and Bars Endorsement provides in relevant part as follows:

**RESTAURANT, BAR, TAVERN, NIGHT CLUBS,
FRATERNAL AND SOCIAL CLUBS ENDORSEMENT**

The coverage under this policy does not apply to "bodily injury," "property damage," "personal and advertising injury," or any injury, loss or damage arising out of:

\* \* \*

3

**IV.** Assault and/or Battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person. Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property. The sentence "This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property" is deleted from the Commercial General Liability Coverage Form, Section I, Item 2., Exclusions, a.

*See* Restaurant and Bars Endorsement, attached hereto as Exhibit F.

20. The Assault and Battery Endorsement provides in relevant part as follows:

**Limited Assault and/or Battery**

The most we will pay as damages under this policy which results from "assault" or "battery" is shown below:

**SCHEDULE – SUBLIMITS OF LIABILITY**

| | |
|---|---|
| Per Occurrence of Each Common Cause: | $100000 |
| Aggregate Limit: | $200,000 |
| Premium: | $15,000.00 |

The Limits of Insurance shown above are the most we will pay as damages, including investigation and defense, because of "injury" regardless of the number of:

a. Insureds;
b. Claims made or "suits" brought; or
c. Persons or organizations making claims or bringing "suits".

\* \* \*

**LIMITS OF INSURANCE:**

a. The Sublimit of Liability shown in the Schedule above is the most we will pay for all damages under coverage provided by this endorsement including investigation and defense due to "injury" arising out of "assault" or "battery". The Sublimits of Liability above are within, and not in addition to, any other limits in the policy to which this endorsement is attached.

b. The Aggregate Limit shown in the Schedule above is the most we will pay for all damages in any one policy period under coverage provided by this endorsement including investigation and defense arising out of "assault" or "battery", regardless of the number of claimants or "injuries". If our limits shown in the Schedule above are exhausted under this endorsement, we will not defend or continue to defend any "suit."

**DEFINITIONS:**

For purposes of this endorsement, the following Definitions are added:

**"Assault"** means any attempt or threat to inflict "injury" to another person including any conduct or action that would reasonably place such person in apprehension of such "injury."

**"Battery"** means the intentional or reckless physical contact with or any use of force against a person without his or her consent that results in "injury" or offensive or abusive touching whether or not the actual "injury" inflicted was intended or expected. The use of force includes but is not limited to the use of a weapon.

**"Injury"** means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.

*See* Assault and Battery Endorsement, attached hereto as Exhibit G.

## The Underlying Actions and Claim

21. On or about July 9, 2012, Essex was notified of an underlying lawsuit brought by Chasma S. Lagrant against TME in Pinellas County Circuit Court (the "*Lagrant* action"). A copy of the Complaint in the *Lagrant* action is attached hereto as Exhibit H.

22. On or about August 27, 2012, Essex was notified of an underlying lawsuit brought by Satis J. Bailey against TME in Pinellas County Circuit Court (the "*Bailey* action"). A copy of the Complaint in the *Bailey* action is attached hereto as Exhibit I.

23. The *Lagrant* and *Bailey* actions are for personal injuries sustained by Lagrant and Bailey when they were trampled after a shooting that occurred at TME on January 8, 2012. *See* Ex. H at ¶¶ 7-8; Ex. I at ¶¶ 7-8. Lagrant and Bailey each claim damages in excess of $15,000.00, exclusive of interest, costs and attorneys' fees. *See* Ex. H at ¶ 1; Ex. I at ¶ 1.

24. On or about September 12, 2012, Essex was notified of an underlying lawsuit brought by Deonte Archer against "Scene Management Group, LLC d/b/a the "Scene Premium Night Club" in Pinellas County Circuit Court (the "*Archer* action"). A copy of the Complaint in the *Archer* action is attached hereto as Exhibit J.

25. The *Archer* action involves a claim for personal injuries suffered by Archer when he was shot in the right thigh while at TME on February 3, 2012. *See* Ex. J at ¶¶4, 10-11. Archer seeks damages in excess of $15,000.00, exclusive of costs. *Id.*

26. On or about November 14, 2012, Essex received a demand letter from counsel for Kendric Stephens in connection with personal injuries Stephens sustained when he was a patron at TME (the "Stephens claim"). The Stephens claim arises out of a shooting incident that occurred at TME on February 8, 2012. Specifically, Stephens was shot in the right lower back and right thigh and has suffered partial paralysis.

27. Stephens has made a policy limit demand to Essex under the purported belief that the applicable policy limit is $1,000,000. Stephens asserts that the Restaurant and Bars Endorsement and the Assault and Battery Endorsement (containing the $100,000/$200,000 sublimit) do not apply, under the theory that Essex "modified" the coverage by adding the Restaurant and Bars Endorsement and the Assault and Battery Endorsement after the Policy was issued and after the incident giving rise to the Stephens claim.

## COUNT I – REFORMATION

28. Essex realleges and incorporates all of the allegations contained in paragraphs 1 through 21 of this Complaint as though restated herein.

29. On or about July 27, 2011, TME contacted Essex to obtain commercial general liability insurance. Essex prepared a Quote and subsequently sent TME a Quote and Binder including the Restaurant and Bars Endorsement and limited coverage for Assault and Battery with a sublimit of $100,000/$200,000. *See* Exs. A – C.

30. TME purchased coverage under these terms and a binder of coverage was issued that also reflected the sublimit.

31. On or about August 17, 2011, Essex issued a commercial general liability insurance policy to TME. *See* Ex. D. As issued, the Supplemental Declarations page of the Policy shows that the Policy had a $100,000/$200,000 sublimit for assault and battery claims. *See id.* at p. 5.

32. The Restaurant and Bars Endorsement and the Assault and Battery Sublimit Endorsement were inadvertently not attached to the Policy when it was delivered to TME.

33. On or about February 13, 2012, Essex issued a correcting endorsement adding the Restaurant and Bars Endorsement and the Assault and Battery Sublimit Endorsement to the Policy.

34. In light of the clerical omission, inadvertence and/or mutual mistake, the Policy should be reformed to accurately express the agreement and intent of the parties.

35. Essex has no other adequate remedy at law.

WHEREFORE, Essex asks this Court to reform the Policy to include the Restaurant and Bars Endorsement and the Assault and Battery Sublimit Endorsement and enter judgment therefore in favor of Essex.

Respectfully submitted,

_____
John R. Catizone, FBN 0695491
Litchfield Cavo, LLP
600 Corporate Drive, Suite 600
Fort Lauderdale, FL 33334
954-689-3000      954-689-3001 (fax)
Email: catizone@litchfieldcavo.com
*Attorneys for Essex*