UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESSEX INS. CO.,

    Plaintiff,

v.                                                                          CASE NO.: 8:13-cv-60-T-23TGW

TINA MARIE ENTER., LLC, et al.,

    Defendants.
_____/

**<u>ORDER</u>**

       This is an atypical action, in which an insurer sues an injured person for reformation of a general commercial liability insurance policy issued to a night club operator, on whose premises the pertinent injury occurred (the injured person alleges in another action that the negligence of the insured's employees caused an assault and battery by a patron of the night club). To limit or defeat the injured person's claim, the insurer aspires to reform the policy to add an endorsement that specifies the terms of an additional coverage for "assault and battery," an intentional wrong usually excluded from a general commercial liability policy, which typically covers a negligent but not an intentional wrong. Unsurprisingly, the insurer's goal in this action is not to secure for the injured party an additional coverage but to secure for the insurer from the terms of the endorsement the benefit of a coverage limitation – otherwise unavailable in, and contrary to, the policy and commonly called a

"cannibal provision" or a "wasting limit" or a "vanishing provision" – that permits the insurer to offset against the stated amount of coverage the cost of the insurer's investigation and defense of the claim. Although a "mutual mistake" by the insurer and the insured might warrant reformation, the record in this action unmistakably establishes only a unilateral mistake – a mistake by the insurer or by the insurer's broker or by both – but not a mutual mistake, not a mistake shared with the insured or with the insured's broker. Absent misconduct (not even alleged in this action), reformation is unavailable to reverse a unilateral mistake.

## Background

On February 8, 2012, a fight between patrons at The Scene Premium Night Club resulted in gun shots. The skirmish injured several patrons including Kendric Stephens, Chasma Lagrant, Satis Bailey, and Deonte Archer. In separate actions, each injured patron lodged a claim against the now-defunct-night-club's owner, Tina Marie Entertainment (TME), and TME's insurance carrier, Essex Insurance Company. In this action, Essex sues (Doc. 1) TME, Stephens, Lagrant, Bailey, and Archer in a one-count complaint for reformation of the insurance policy that Essex issued to TME. Essex alleges (Doc. 1 at 7) that the policy inadvertently omitted an "assault and battery" endorsement and a "restaurants and bars" endorsement. In particular, the assault and battery endorsement contains a "wasting limit" that – contrary to the terms of the general liability policy – offsets investigative and defense costs against the policy limit for assault and battery ($100,000 in this instance).

Except Stephens, each defendant, including TME, defaulted. (Docs. 30-33) Essex and Stephens each move (Docs. 40 and 53) for summary judgment.[1]

## The Application

With the assistance of an insurance agent, Steve Marciano, TME completed an application for a commercial general liability insurance policy for the night club.[2] (Docs. 44-1 and 54 at 7-8) The application – under the heading "Coverage Information" – permits the applicant to select a level of coverage for "Assault and Battery" by checking a box. The choices are "Excluded," "100,000," and "1,000,000." (Doc. 44-1 at 1) TME checked none of the boxes. (Doc. 44-1 at 1) One of TME's managers signed the application on July 22, 2011. (Doc. 44-1 at 7) Marciano submitted the signed application to a surplus lines insurance broker, Atlantic Surplus Lines of Florida. (Doc. 53-2 at 20)

## The Quote

An August 8, 2011, document from Atlantic Specialty offers a "quote" from Essex for "Commercial General Liability." (Doc. 40-2) The quote lists a coverage limit of $1,000,000 for each occurrence and an aggregate limit of $2,000,000. (Doc. 40-2) The quote includes a bodily injury and property damage deductible of $1,000 and lists – by title only – several endorsements ostensibly appended to the

---

[1] As a defendant to this action and as an intended beneficiary of the policy, Stephens has standing to contest Essex's reformation action. *See* 2 *Couch on Insurance* § 28.2 (3d Ed. 2013).

[2] Marciano communicated with TME through TME's managers, Melissa Jones, Brian Brandano, and Richard Fabrizi. (Doc. 54 at 7-8)

- 3 -

final policy. (Doc. 40-2) The listed endorsements are "ME-189(01-09) RESTAURANTS AND BARS" and "MEGL 1279 06 10 LIMITED ASSAULT OR BATTERY: complete with sublimit of 100,000/200,000."[3] (Doc. 40-2)

### The Insurance Proposal

On August 16, 2011, Marciano sent TME an "insurance proposal." (Docs. 53-2 at 1-18 and 54 at 13) The proposal, which identifies Essex as the carrier for the general liability coverage, includes a one-page schedule of the proposed general liability coverage (and a quote from a separate carrier, Founders Insurance Company, for "liquor liability" coverage). (Doc. 53-2 at 4-5) In addition to the general liability coverage of $1,000,000, the proposal lists an "Assault & Battery Coverage" of $100,000 for "BI/PD [bodily injury and property damage] per occurrence," and of $200,000 for "A/B [assault and battery] aggregate limit." (Doc. 53-2 at 4) Marciano's insurance proposal includes neither a restaurants and bars endorsement nor an assault and battery endorsement. Marciano's proposal states that "Defense Limits covered in addition to policy limit." On August 22, 2011, Melissa Jones, in behalf of TME, accepted and signed Marciano's proposal. (Doc. 53-2 at 12) Jones initialed the one-page schedule listing the $100,000/$200,000 coverage limit for assault and battery. (Doc. 53-2 at 4)

---

[3] The "To," "Attention," and "From," sections of the document are blank. (Doc. 40-2)

**The Binder and Policy**

On August 22, 2011, acting on behalf of TME, Marciano instructed a broker at Atlantic Specialty to "bind" the Essex policy "effective 8/17/2011." (Docs. 54 at 14 and 53-2 at 19) On August 23, 2011, an underwriter at Atlantic Specialty sent Marciano an e-mail attaching the policy binder.[4] (Doc. 40-3 at 1-4) The binder summarizes the insurance coverage and includes a line binding a "100,000/200,000" coverage limit for "Assault and Battery." (Doc. 40-3 at 3) The binder sent by Atlantic Specialty to Marciano includes neither an assault and battery endorsement nor any equivalent.

Essex issued a commercial general liability policy to TME effective August 17, 2011, through August 17, 2012. (Doc. 40-4) On August 16, 2011, Marciano hand-delivered the Essex policy to Richard Fabrizi at TME and advised Fabrizi to review the policy for a discrepancy.[5] (Doc. 54 at 16) The "Supplemental Declarations" page of the policy lists coverage that includes "100,000/200,000 Assault and

---

[4] A binder is typically a terse and telegraphic document providing interim insurance coverage until the insurer issues the formal policy. *See* 2 *Couch on Insurance* § 28.2 (Third Ed. 2013) ("[I]nsurance companies often issue a 'binder,' also called 'temporary' or 'preliminary' insurance, upon an application for insurance or payment of the first premium, which covers the applicant until the insurance company's investigation of his or her insurability can be completed and a policy issued or the risk refused. The temporary insurance is commonly effected by means of a binder, which may be temporary, sketchy, and informal, but is nonetheless a contract.").

[5] Marciano testified that customarily both the broker at Atlantic Specialty (for Essex) and Marciano (for TME) review the policy for a discrepancy. (Doc. 54 at 15-16, 28) Although he could not recall reviewing the policy upon receipt, Marciano speculated that he would have noted in his file an anomaly in the policy and would have requested a clarification from the broker. (Doc. 54 at 28-29) Marciano noted in his file no discrepancy and addressed no discrepancy with the broker. (Doc. 54 at 29-30)

Battery." (Doc. 53-2 at 22) The same page directs the reader to "SEE FORMS SCHEDULE - MDIL 1001." (Doc. 53-2 at 22) The "forms schedule" lists the forms comprising the contents of the policy, including a number of endorsements. (Doc. 40-4 at 6) Consistent with the proposal and the binder, the forms schedule in the Essex policy includes no assault and battery endorsement. (Docs. 40-2 and 40-4 at 6) In sum, the Essex policy, as issued, lists $100,000/$200,000 coverage for assault and battery but neither lists nor attaches the assault and battery endorsement on which Essex now relies in this reformation action.[6] (Doc. 1 at 3)

### The General Change Endorsement

During the February 8, 2012, fight between patrons at TME's The Scene Premium Nightclub in St. Petersburg, Florida, bullets hit Kendric Stephens in the right thigh and the right lower back. Stephens' injury included partial paralysis. (Doc. 40-9 at 2) On February 9, 2012, Marciano notified Atlantic Specialty about a potential claim against Essex.[7] (Doc. 53-2 at 27) On February 13, 2012, immediately after receiving Marciano's notice of potential claim, Essex issued to TME a "General Change Endorsement." (Doc. 53-2 at 23-26) The general change endorsement states:

---

[6] Marciano testified that he does not know whether the policy contained the endorsements. (Doc. 54 at 18)

[7] In a February 9 e-mail to a broker at Atlantic Specialty, Marciano wrote, "Apparently there were some issues at [the] Scene on Tuesday night which made the news. I'm awaiting word but I heard gunshots were fired outside from what I understand. I'm awaiting an email with the details so you can report to carrier a potential claim may ensue." (Doc. 53-2 at 27)

> It is agreed that as of the effective date hereof, the policy is hereby amended in the following particulars:
>
> The following forms are ADDED to the policy as hereto attached:
>
> ME189(01/09) RESTAURANT, BAR, TAVERN, NIGHT CLUBS, FRATERNAL AND SOCIAL ENDORSEMENT
>
> MEGL 1279 (06/10) LIMITED ASSAULT AND/OR BATTERY

(Doc. 53-2 at 23)  The general change endorsement attempts unilaterally to superimpose on the policy an amendment that adds both the restaurants and bars endorsement and the assault and battery endorsement, each putatively retroactive from February, 2012, to August 17, 2011.[8]  (Docs. 40-5 and 53-2 at 23-26)

The restaurants and bars endorsement states in relevant part:

> **RESTAURANT, BAR, TAVERN, NIGHT CLUBS, FRATERNAL AND SOCIAL CLUBS ENDORSEMENT**
>
> * * *
>
> The coverage under this policy does not apply to "bodily injury," "property damage," "personal and advertising injury," or any injury, loss or damage arising out of:
>
> * * *
>
> IV.   Assault and/or Battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's

---

[8] The general change endorsement (clumsily) states, "This endorsement forms a part of the policy to which attached effective from its date of issue unless otherwise stated herein." (Doc. 53-2 at 23) Of course, the endorsement was not attached to the policy as originally issued, and the endorsement fails to "attach[]" the policy. Although the endorsement states that the "Policy Period Inception" is August 17, 2011, the change endorsement also states that it was "Issued" on February 13, 2012, long after the main policy's date of inception. The purported effective date of the change endorsement, to say the least, is ambiguous. (Doc. 53-2 at 23)

> employees, patrons or any other person. Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property. The sentence "This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property" is deleted from the Commercial General Liability Coverage Form . . . .

(Doc. 53-2 at 24)  The assault and battery endorsement states in relevant part:

> **Limited Assault and/or Battery**
>
> The most we will pay as damages under this policy which results from "assault" or "battery" is shown below:
>
> **SCHEDULE – LIMITS OF LIABILITY**
>
> Per Occurrence of Each Common Cause:   $100000
>
> Aggregate Limit:                        $200,000
>
> Premium:                                $15,000.00
>
>                          \* \* \*
>
> **LIMITS OF INSURANCE**
>
> a.  The Sublimit of Liability shown in the Schedule above is the most we will pay for all damages under coverage provided by this endorsement including investigation and defense due to "injury" arising out of "assault" or "battery". The Sublimits of Liability above are within, and not in addition to, any other limits the policy to which this endorsement is attached.
>
> b.  The Aggregate Limit shown in the Schedule above is the most we will pay for all damages in any one policy under coverage provided by this endorsement including investigation and defense arising out of "assault" or "battery", regardless of the number of claimants or "injuries". If our limits shown in the

> Schedule above are exhausted under this endorsement, we will not defend or continue to defend any "suit."

(Doc. 53-2 at 25 and 26)

## Reformation

Because Essex alleges only a claim for reformation, Essex conspicuously (and forever) forbears a claim in behalf of the retroactive effectiveness of the General Change Endorsement. Obviously, if the General Change Endorsement were effective retrospectively, Essex would include in this action a claim pleaded in the alternative and designed to establish and enforce the General Change Endorsement. Similarly, Essex includes no claim designed to avoid entirely the general liability policy because of any initial failure in "the meeting of the minds." In sum, this action presents a single, straightforward, and telescopic claim for reformation of a contract to include printed matter prepared by and known to, but mistakenly omitted by, the offering party in compiling and conveying the offer, which was unconditionally accepted.

Florida law "strongly" presumes that an insurance policy expresses the parties' intent. *Golden Door Jewelry Creations v. Lloyds Underwriters Non-Marine Ass'n*, 8 F.3d 760, 765 (11th Cir. 1993), *rev'd in part on other grounds*, 117 F.3d 1328 (11th Cir. 1997). Against this presumption, a party seeking reformation must "demonstrate not by mere preponderance of the evidence, but rather by clear and convincing evidence, that the policy did not accurately reflect the parties' agreement." *Golden Door*, 8 F.3 at 765; *Continental Cas. Co. v. City of Ocala*, 127 So. 894, 895-96 (Fla. 1930).

A party's unilateral mistake or inadvertence warrants reformation "only if coupled with the inequitable conduct on the part of the other party." *HealthTronics*, 114 So. 3d at 366.  Essex neither alleges nor proves any misconduct on the part of TME.  Accordingly, Essex's claim for reformation rests solely on the theory that the failure to include the endorsements resulted from a "mutual mistake."

In a reformation based on mutual mistake "the want of conformity to the agreement of the parties must be occasioned by a mistake which is mutual and common to both parties to the instrument.  A mistake on one side may be a ground for rescinding, but not for reforming, the contract.  Where the minds of the parties have not met, there is no contract, and hence none to be rectified." *Fidelity Phenix Fire Ins. Co. v. Hilliard*, 62 So. 585, 586 (Fla. 1913).  Section 155 of the *Restatement (Second) of Contracts* states:

> Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.

As stated in the drafters' comment (a) that accompanies Section 155:

> The province of reformation is to make a writing express the agreement that the parties intended it should. Under the rule stated in this Section, reformation is available when the parties, having reached an agreement and having then attempted to reduce it to writing, fail to express it correctly in the writing. Their mistake is one as to expression—one that relates to the contents or effect of the writing that is intended to express their agreement—and the appropriate remedy is reformation of that writing properly to reflect their agreement. For the rule stated in

> this Section to be invoked, therefore, there must have been some agreement between the parties prior to the writing.

Comment (b) to Section 155 confirms that "[t]he rule stated in this Section applies only where both parties are mistaken with respect to the reduction to writing."

## DISCUSSION

The record in this action establishes unmistakably that Essex's failure to include in the policy the restaurants and bars endorsement and the assault and battery endorsement was a unilateral mistake on the part of Essex and not a mutual mistake by Essex and TME.

The undisputed chronology of events establishes that TME, acting through TME's agent Marciano, submitted to Atlantic Specialty, Essex's broker, an application for general commercial liability insurance.  TME's application is less than a contractual offer and is more an expression of interest in a category of insurance product, an invitation to Atlantic Specialty to acquire from an insurer and to transmit to TME an offer for commercial general liability coverage at a satisfactory price.  The application is silent on assault and battery coverage.

A few days later, on August 8, 2011, Atlantic Specialty conveyed to TME through Marciano an offer – a proposal entitled "Insurance Proposal for Tina Marie Entertainment" – that includes assault and battery coverage.  The proposal omits the endorsement that Essex seeks in this action to add by reformation.  TME accepted the quote, Marciano authorized a binder, Atlantic Specialty issued the binder, and Essex issued the policy.  Nothing in the record evidences that TME, Marciano,

- 11 -

Atlantic Specialty, and Essex negotiated or even discussed the endorsements or the wasting limit.  The policy states that the cost of defense "will not be deemed to be damages for 'bodily injury' and 'property damage' and will not reduce the limits of insurance."  (Doc. 40-4 at 15)  Simply stated, as to the endorsements, "the minds of the parties have not met, there is no contract, and hence none to be rectified."  *Hilliard*, 62 So. at 586.  As stated by *Golden Door*, "Most factual circumstances do not support reformation, and wisely so.  Contracts must be binding, and unless the parties can demonstrate – with clear and convincing evidence – that the contract does not reflect the parties' mutually agreed-upon terms, the courts may not reform the contract, no matter how severely one party must suffer."  *Golden Door*, 8 F.3d at 767.

The drafters' comment to Section 155 of the *Restatement* includes an example precisely contemplating and resolving the present circumstance:

> If one party sends to the other an offer which, because of a mistake, does not reflect the offeror's intention, the rule stated in this Section does not apply both because only one party is mistaken and because there was no prior agreement. The mistaken party's remedy, if any in that case is not reformation but avoidance under the rule stated in § 153.

Because the record leaves no genuine issue of material fact, Essex's claim for reformation fails, Stephens's motion for summary judgment (Doc. 53) is **GRANTED**, and Essex's motion for summary judgment (Doc. 40) is **DENIED**.  The clerk will enter judgment in favor of Stephens and against Essex.

Essex settled the claims brought by the defendants Lagrant and Bailey. (Doc. 40 at 6) Accordingly, Essex's claims against Lagrant and Bailey are **DISMISSED AS MOOT**.

As to Archer and TME, no later than **April 14, 2014**, Essex must show cause why the claim against Archer and TME should not suffer dismissal with prejudice because, for the reason stated in this order, the complaint fails to state a claim for reformation.

ORDERED in Tampa, Florida, on April 4, 2014.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE